On the Merits.
It appears, from the facts stated, that Claudel is in possession, not only of all the space he expected to get when he made his contract with Seeger, but, for the purposes of his showcase, of the third pillar from the west side of the building, which was hot within the contemplation of his contract. It also appears that the right was conceded to him to put a showcase on the east side of the pillar, about which this litigation has arisen (being the second one from the west side of the building), and the plaintiffs were further willing to concede to him a portion of the space in their showcase on the front of the same pillar. His position, however, is that, as his lease calls for 12 feet, and plaintiffs’ lease was not recorded when his was entered into, he was not, and is not, bound to take notice of their rights (as against Seeger) or of Seeger’s obligation to them, and that he can oust them from, and compel Seeger to put him in possession of, space which, at the date of his lease, apparently and in fact was beyond the control of Seeger and in the possession of plaintiffs, and so remained for months afterwards. It is undisputed, however, that long before Olaudel spoke to Seeger about leasing from him he was familiar with the property, and knew as well of the existence of plaintiffs’ vestibule and showcases as he did of the stairway and pillars. And yet neither during the negotiations which preceded the making of his lease, nor during the interval between the signing of the lease (in March) and his going in possession (in September), nor during the several weeks prior to October 1st, when he was installing his partition and fixtures, did he ever suggest that any of the space occupied by plaintiffs was included in that for which he was negotiating and contracting, and into the possession of which he entered after his contract was made. He himself testifies that the only thing he asked of Seeger was the opening of the space between the second and third pillars by the removal of the show window, 'arid he admits that Seeger not only granted' the request, but that he voluntarily agreed' to *227 take less for the place than lie (Claudel) had offered him, because his (Seeger’s) rent had been reduced, and, when the present trouble arose, accorded to him (Olaudel) the privilege of using the third pillar, to which he had made no claim, for the purposes of a showcase.
The learned judge of the district court was of opinion, and so held, that “the right of entrance and access to the upper floors being undoubted, and the lease” (to Claudel of 12 feet of the lower floor) “being silent thereon, the extent of the right, and what was included therein, were legitimate subjects of inquiry outside of the lease,” and that the result of such inquiry was to satisfy his mind that there is no conflict between the leases, and that Claudel “is in full possession of the entire premises leased by him.” Wp are of the same opinion. When Claudel leased “the lower floor of the building No. 916 Canal street,” he committed himself to a recognition of the fact that there were as many upper floors as in truth existed, and knowing, as he did, that they were, or were intended to be, occupied by other tenants, and that aerial navigation has not so far been applied to practical uses as to justify any assumption to the contrary, he further recognized and consented, as we think, that the lower floor was necessarily subjected to something in the nature of servitudes in favor of such upper floors and their occupants. It was, therefore, as though he had in terms agreed that his lease should not include the rights, privileges, or appurtenances, necessarily or properly included in the lease of the floors above him, leaving the specification of their character to be supplied, in case of dispute, by evidence dehors his lease as to the understanding between him and his lessor on the subject, or as to facts, knowledge, and conduct from which such understanding might fairly be presumed.
As to the understanding, it appears, from his own admission, that he knew the plaintiffs personally; knew that they were, and had béen, occupying the upper floors in question, as tenants, engaged in the business of photography; that as necessarily or reasonably appurtenant to their photograph gallery they required the stairway as a means of access and egress, and some space at the street entrance for advertising purposes; that he was perfectly familiar with the condition which, as a matter of fact, had been established as between plaintiffs and their common lessor, and entered into his lease, not only without making any objection, but impliedly consenting thereto, and thereafter confirmed what he had done by asking and accepting a concession which he could not reasonably have asked, and which, in all probability, would not have been granted, if it had been supposed by any one that he was entitled, under his lease, to that which he is now insisting on. These facts, we think, justify the conclusion, reached by the judge a quo, that “he is in full possession of the entire premises leased by him,” and “that his lease is not in conflict with that of plaintiffs.” If it be not so, and if the theory propounded on his behalf be accepted, he would be entitled to more than he asks, and if, under the same lease, he were on the ground floor of an office building, towering to the sky, he would be entitled to' close the stairways, stop the elevators, prohibit the use of the fire escapes, and remove the directory displaying the names of the upstairs tenants.
We are, however, unable to concur in the view that Claudel’s call in warranty should have been dismissed on exception. He was sued, as a tenant, by one claiming part of, or a servitude upon, the thing which he alleges was leased to him, and it was his privilege to call his lessor in warranty and make out against him the best case that he could. Civ. Code, 2704. Being denied that privilege, and the lessor being eliminated by the judgment dismissing the call (save in so far as he is *229 an appellee therefrom), the inference that no judgment on the merits could, in any event, be rendered against him, was premature, since it was predicated upon the judgment of the district court thereafter to he rendered, and of this court, which is yet to be rendered, and such inference cannot he considered a substitute for the judgment for or against him, which the appellant was and is entitled to demand.
It is therefore ordered, adjudged, and decreed that the judgment of January 15, 1908 (signed January 21, 1908), dismissing the call in warranty made by the defendant, Claudel, ■on his codefendant, Seeger, be avoided and reversed, and the case, with respect to such ■call, be remanded to the district court, t.o be there proceeded with according to law and to the views herein expressed; the costs of the appeal, in so far as said judgment is concerned, to be paid by defendant Seeger, and those of the district court to await the final judgment thereon. It is further adjudged and decreed that the judgment of February 24, 1908 (signed February 28, 1908), on the merits, be affirmed, at the cost of the appellant, E. Claudel.
BREAUX, O. J., concurs,